TONY B. NICHOLSON v. AMERICAN SAFETY UTILITY CORPORATION, DUKE POWER COMPANY AND NORTH HAND PROTECTION, A DIVISION OF SIEBE NORTH, INC., SIEBE NORTH HOLDINGS CORP., SIEBE, INC., SIEBE INDUSTRIES, INC., AND SIEBE PLC

No. 486PA96

(Filed 24 July 1997)

**Products Liability § 18 (NCI4th)— electrical safety gloves— products liability action by lineman—contributory negligence**

Summary judgment was improperly granted for defendants on the issue of plaintiff's contributory negligence where plaintiff was an electrical lineman; his protective helmet was blown off by the wind three times while he was working on an overhead power line; he did not replace it the third time; an energized line either touched plaintiff or came within a short distance of his unprotected head; electricity ran from the overhead line through his body and exited by his gloved hands, which were holding a grounded cable; and defendants were the manufacturer and seller of the gloves. N.C.G.S. § 99B-4(1) and (3) merely codify the common law doctrine of contributory negligence as it applies in products liability actions, and N.C.G.S. § 99B-4 sets out or explains more specialized fact patterns which would amount to contributory negligence in a products liability action. It does not create a different rule for products liability actions but clarifies the common law contributory negligence standard with respect to these actions and clearly provides that one who is negligent under the circumstances in the use of the product will be barred from recovery. All of the circumstances during the plaintiff's use

of the product must be considered, not just plaintiff's conduct with respect to the product itself. Here, defendants' and plaintiff's affidavits contest whether plaintiff's conduct was reasonable under the circumstances and an issue of fact exists as to the reasonableness of plaintiff's conduct under the circumstances.

**Am Jur 2d, Products Liability §§ 1047, 1333, 1346, 1431, 1451.**

**Products liability: product misuse defense. 65 ALR4th 263.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 124 N.C. App. 59, 476 S.E.2d 672 (1996), affirming in part and reversing in part judgments entered by Farmer, J., at the 13 February 1995 Civil Session of Superior Court, Wake County. Heard in the Supreme Court 13 May 1997.

*Twiggs, Abrams, Strickland & Trehy, P.A., by Douglas B. Abrams, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Robert W. Sumner and H. Lee Evans, Jr., for defendant-appellant American Safety Utility Corp.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., Richard W. Ellis, and Leslie C. O'Toole, for defendant-appellant Siebe North, Inc., and Siebe Holdings Corp.*

*John N. Hutson, Jr., and Scott A. Miskimon, amici curiae.*

*Battle, Winslow, Scott & Wiley, P.A., by Sam S. Woodley, on behalf of The North Carolina Association of Defense Attorneys, amicus curiae.*

FRYE, Justice.

In the main issue on this appeal, we consider the defense of contributory negligence as codified in N.C.G.S. § 99B-4(3) and its application to products liability claims brought by plaintiff to recover for injuries sustained in an accident. We affirm the Court of Appeals on the issues of defendants' negligence and defendant Siebe's breach of implied warranty for the reasons stated in its opinion. We further conclude that the Court of Appeals erred in its interpretation of N.C.G.S. § 99B-4(3) and hold that N.C.G.S. § 99B-4(3) codifies the common law standard of contributory negligence and does not limit the defense to

a plaintiff's misuse of the product. Finally, we hold that summary judgment was not proper on the issue of plaintiff's contributory negligence, and therefore, we affirm the Court of Appeals as to that issue but on different grounds.

On 26 January 1990, plaintiff, an experienced Class A electrical lineman for Harrison-Wright, Inc., was working on a project for Duke Power Company extending an overhead power line across the road from one utility pole to another. Plaintiff and a co-worker were standing in an insulated utility bucket elevated beneath energized overhead lines which carried approximately 7,200 volts of electricity. The energized lines were covered with rubber hoses to shield plaintiff and his helper from the high voltage while in close proximity to the lines. In addition, the men wore protective helmets and rubber safety gloves.

At the time of the incident, plaintiff was connecting a de-energized conductor to a de-energized underground cable. Plaintiff's helmet had blown off twice, and each time, he had immediately lowered the utility bucket to retrieve it. After retrieving the helmet the second time, plaintiff was tightening a "split bolt" when the wind blew his helmet off a third time. Without retrieving his helmet, plaintiff continued to tighten the split bolt. An energized line from above him either touched or came within an extremely short distance of plaintiff's unprotected head. Electricity raced from the overhead line to plaintiff's head and through his body and exited via his gloved hands, which were holding a de-energized, grounded cable. Plaintiff suffered severe and permanent brain damage and nervous system injuries.

The gloves worn by plaintiff at the time of his injury were manufactured by defendant Siebe North, Inc. (Siebe), and were subsequently purchased by defendant American Safety Utility Corporation (ASU) on 18 March 1989. Thereafter, the gloves were sold and delivered by ASU to plaintiff's employer, Harrison-Wright, on or about 14 January 1990. According to affidavits submitted by defendants, before plaintiff's accident, the gloves had passed two industry-standard safety tests—a visual and dielectric safety test at Siebe on 16-17 February 1989 and a second similar test at ASU on 12 January 1990. Siebe sold the gloves as Class II lineman's gloves, safe for use with energized lines up to 17,000 volts. Plaintiff obtained the gloves from his employer on 23 January 1990 and suffered the injury on 26 January 1990.

NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[346 N.C. 767 (1997)]

After the accident, plaintiff commenced a products liability action by filing a complaint against defendants ASU and Duke Power Company on 9 December 1992, alleging that defendant ASU (1) negligently failed to properly test rubber gloves which it contracted to test; (2) negligently supplied defective rubber gloves to plaintiff when it knew or should have known that rubber gloves are a safety device used by persons working on energized power lines and when it knew or should have known that defective rubber gloves would put the lives and health of persons such as plaintiff in jeopardy; (3) negligently represented that the subject rubber gloves had been properly tested and that the rubber gloves were suitable for use by persons working on energized power lines, when in fact the rubber gloves were defective and were unsuitable for such use; and (4) negligently inspected the subject rubber gloves. Plaintiff alleged that his injuries were caused when the electrical current "completed as a result of the defective condition of the subject rubber gloves." Plaintiff also alleged that defendant Duke Power Company was legally responsible for the negligence of ASU under the doctrine of *respondeat superior*.

On 19 January 1993, plaintiff amended his complaint to add the Siebe defendants (collectively referred to herein as "Siebe" or "defendant Siebe") as parties to this action, alleging Siebe's negligence and breach of warranties, and to add a claim for breach of warranties against defendant ASU. Plaintiff's claims were brought against defendant Siebe as manufacturer of the gloves worn by plaintiff at the time of the accident and against ASU as the seller of the gloves. Plaintiff alleged claims of negligence against Siebe and ASU based upon their failure, *inter alia*, to "exercise due care in the testing, inspection, marketing, promotion, sale and/or delivery of the subject safety gloves." Plaintiff's complaint also contained claims of breach of express and implied warranties, including specifically the failure to warn. Defendant Duke Power Company is not a party to this appeal.

The Siebe defendants filed answers on 17 March 1993, and defendant ASU filed its answer on 26 March 1993. Defendants denied any breach of warranty or negligence and asserted several affirmative defenses, including contributory negligence, assumption of risk, and damage to the gloves subsequent to defendants' release of possession and control thereof.

On 1 February 1995, defendant ASU filed a motion for summary judgment as to all claims, and on 3 February 1995, defendant Siebe

made a similar motion for summary judgment. Plaintiff moved for partial summary judgment on the issues of breach of implied warranty and contributory negligence and filed a notice of filing in opposition to defendant Siebe's motion for summary judgment and in support of plaintiff's motion for partial summary judgment on 3 February 1995.

On 21 February 1995, the trial court, having considered the affidavits, briefs, and other materials submitted by the parties, granted summary judgment in favor of defendants Siebe and ASU and denied plaintiff's motion for summary judgment. In granting defendants' motions for summary judgment, the trial court found that there was no genuine issue as to any material fact and that plaintiff was contributorily negligent as a matter of law.

Plaintiff appealed to the North Carolina Court of Appeals, which affirmed the entry of summary judgment in favor of ASU on the issue of breach of implied warranty and in favor of all defendants on the issue of breach of express warranty. However, regarding the issues of plaintiff's contributory negligence, defendants' negligence, and Siebe's breach of implied warranty, the Court of Appeals reversed the trial court's grant of summary judgment in favor of defendants. This Court granted defendants' petitions for discretionary review on the issues of defendants' negligence, Siebe's breach of implied warranty, and plaintiff's contributory negligence.

As to the issue of defendants' negligence, the Court of Appeals reversed the summary judgment entered in favor of defendants, holding that a genuine issue of material fact existed as to "the alleged failure of defendants Siebe and ASU to test and inspect the gloves properly and to convey adequate warning of potential deficiencies in the gloves." *Nicholson v. American Safety Util. Corp.*, 124 N.C. App. 59, 66, 476 S.E.2d 672, 677 (1996). On plaintiff's claim of breach of implied warranty against defendant Siebe, the Court of Appeals reversed the summary judgment in favor of Siebe because of "a genuine issue of material fact regarding the existence of a defect in the gloves at the time they left Siebe's possession." *Id.* at 69, 476 S.E.2d at 678. We agree that genuine issues of material fact exist with respect to defendants' negligence and Siebe's breach of implied warranty, and therefore, we affirm the Court of Appeals on these issues for the reasons stated in that court's opinion.

The central issue on this appeal is plaintiff's alleged contributory negligence and the scope of that defense as it is defined in N.C.G.S.

§ 99B-4(3). N.C.G.S. § 99B-4, as it existed at the time of the accident, provided as follows:

No manufacturer or seller shall be held liable in any product liability action if:

(1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; provided, that in the case of prescription drugs or devices the adequacy of the warning by the manufacturer shall be determined by the prescribing information made available by the manufacturer to the health care practitioner; or

(2) The user discovered a defect or unreasonably dangerous condition of the product and was aware of the danger, and nevertheless proceeded unreasonably to make use of the product and was injured by or caused injury with that product; or

(3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.

N.C.G.S. § 99B-4 (1989). N.C.G.S. § 99B-4(2) addressed discovered defects or unreasonably dangerous conditions of the product and a plaintiff's conduct with respect to those defects or conditions. We have said that N.C.G.S. § 99B-4(1) and (3) "merely codify the common law doctrine of contributory negligence" as it applies in products liability actions. *Champs Convenience Stores, Inc. v. United Chemical Co.*, 329 N.C. 446, 452, 406 S.E.2d 856, 860 (1991). "In addition to codifying the general doctrine of contributory negligence, § 99B-4 sets out or explains more specialized fact patterns which would amount to contributory negligence in a products liability action." *Id.* at 453, 406 S.E.2d at 860.

At common law, "[a] plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise *under the circumstances* in order to avoid injury." *Newton v. New Hanover County Bd. of Educ.*, 342 N.C. 554, 564, 467 S.E.2d

NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[346 N.C. 767 (1997)]

58, 65 (1996) (emphasis added). N.C.G.S. § 99B-4(3) does not create a different rule for products liability actions; it clarifies the common law contributory negligence standard with respect to these actions. The statute clearly provides that one who is negligent "under the circumstances in the use of the product" will be barred from recovery. *See Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 721-22 (4th Cir. 1995) (holding that the focus of N.C.G.S. § 99B-4(3) is not on a plaintiff's "use of the product" *per se*; rather, the focus is on whether a plaintiff "failed to exercise reasonable care under the circumstances in the use of the product"); *cf. Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 338-39 (4th Cir.) (common law defense of contributory negligence not defense to claim brought under Kentucky's products liability statute), *cert. denied*, 502 U.S. 820, 116 L. Ed. 2d 52 (1991).[1] Thus, all of the circumstances during the plaintiff's use of the product must be considered, not just plaintiff's conduct with respect to the product itself.

"In a product liability action founded on negligence, '[t]here is no doubt that . . . [plaintiff's] contributory negligence will bar his recovery to the same extent as in any other negligence case.' " *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 672, 268 S.E.2d 504, 506 (1980) (quoting William L. Prosser, *Handbook of The Law of Torts* § 102, at 670 (4th ed. 1971)) (alterations in original). In addition, contributory negligence also bars a products liability claim against a manufacturer or seller based on breach of implied warranty. N.C.G.S. § 99B-4 ("No manufacturer or seller shall be held liable in *any* product liability action if [plaintiff is contributorily negligent.]") (emphasis added); *Gillespie v. American Motors Corp.*, 69 N.C. App. 531, 317 S.E.2d 32 (1984); *see also Steelcase, Inc. v. Lilly Co.*, 93 N.C. App. 697, 701, 379 S.E.2d 40, 43 (noting that the plaintiff's contributory negligence defeated its entitlement to damages under a claim for breach of implied warranty), *disc. rev. denied*, 325 N.C. 276, 384 S.E.2d 530 (1989). Thus, contributory negligence in the context of a products liability action operates as a bar to recovery in the same manner as in an ordinary negligence action.

Having determined the scope of contributory negligence and its application in a products liability action, we turn to whether the trial court erred in concluding that plaintiff was contributorily negligent as a matter of law. Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, admissions on

---

1. Plaintiff's reliance on *Sexton* is misplaced because, unlike North Carolina's statute, Kentucky's products liability statute is based on strict liability.

NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[346 N.C. 767 (1997)]

file, and affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (1990). The party moving for summary judgment has the burden of showing that there is no triable issue of material fact. *Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). On a motion for summary judgment, "the forecast of evidence and all reasonable inferences must be taken in the light most favorable to the non-moving party." *Woodson v. Rowland*, 329 N.C. 330, 344, 407 S.E.2d 222, 231 (1991).

Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 418, 395 S.E.2d 112, 116 (1990). Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted. *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 468-69, 279 S.E.2d 559, 563 (1981).

In the instant case, defendants' and plaintiff's pleadings and affidavits contest whether plaintiff's conduct was reasonable under the circumstances. Among the statements in defendants' affidavits, James Samuel McKnight, an electrical engineer, asserted that "plaintiff's failure to comply with the safety standards was the cause of the accident." On the other hand, among the statements in plaintiff's affidavits is a statement by Arthur R. McDonald, an electrical engineer and vice-president of Harrison Wright, that "[t]he procedures followed by [plaintiff] were consistent with the types of procedures other linemen similarly trained would follow under similar circumstances." Therefore, an issue of fact exists as to the reasonableness of plaintiff's conduct under the circumstances. Thus, the grant of summary judgment on the issue of plaintiff's contributory negligence was improper. Accordingly, we affirm the Court of Appeals' decision reversing the trial court's entry of summary judgment in favor of defendants as to the issue of contributory negligence, but for the reasons stated herein rather than those stated by the Court of Appeals.

MODIFIED AND AFFIRMED.